# In the United States Court of Federal Claims

No. 09-559 L

(Filed February 24, 2010)

BENNY J. AND JUDY A. )
JANSSEN, Husband and Wife, )
DREYER PROPERTIES, LLC, et al., )
on their own behalf and on behalf of a )
class of others similarly situated, )
                              Plaintiffs, )
     v. )
                                  )
THE UNITED STATES, )
                       Defendant. )
                                  )

## ORDER

On January 29, 2010, the parties stipulated that this matter may proceed as a class action under Rule 23 of the Rules of the Court of Federal Claims ("RCFC"). Upon review of the stipulation and the merits, the court certifies the presented class, and in the main, adopts the stipulation, schedule and notice procedures presented.

Plaintiffs are landowners along allegedly abandoned Nebraska railroad easements[1] owned by Nebkota Railway, Inc. ("NRI"). Federal legislation purportedly resurrected that easement and transformed it into a public recreational trail with possible future reactivation and return to a railway easement. Accordingly, "[t]he principal issue in this [rails-to-trails] case is whether the deprivation of the proposed class members' 'reversionary' property rights resulting from the transfer of the Railroad Line to a third party for use as a public recreational trail under the Trails Act constitutes a taking of the Plaintiffs' property for which 'just compensation' is due under the Fifth Amendment to the United States Constitution." (Am. Compl. [6] 6.) The landowners contend that the abandonment of the railroad easement forfeited that interest, removing that burden and restoring the underlying landowners' fee simple

---

[1] The railroad interest is described as an easement and also as a right-of-way. At this time the court is not making any finding as to the nature of the encumbrance.

interest.  The legislation noted reversed that automatic reverter under Nebraska state law and unilaterally created two easements:  (1) a public recreational trail and (2) a possible future railway easement. Compensation sought is the diminution in value between the landowners' property with easements for public trail purposes and possible future rail use and the value without, and "attenuating delay damages based upon the delayed payment of compensation."  (Am. Compl. [6] 5.)  Plaintiffs also request costs and expenses incurred, including reasonable attorney, appraisal and engineering fees, pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) (2000).

In sum, the taking alleged (the particulars of which are not, at this time the focus of the attention of the parties or the court) includes the issuance on March 21, 2006 and October 1, 2007 of Notices of Interim Trail Use ("NITU") by the Surface Transportation Board ("STB") as to the two easements, and an October 3, 2008 Trail Use Agreement between NRI and the Nebraska Game and Parks Commission ("NGPC") which resulted in the transfer of the railroad easement to the NGPC for use as a public recreational trail with possible future activation as a railroad, pursuant to the National Trails System Act Amendments of 1983, 16 U.S.C. §1247 ("Trails Act"). Plaintiffs conclude that "[b]ut for operation of the Trails Act, Plaintiffs would have the exclusive right to physical ownership, possession and use of [their] property free of any easement for recreational trail use or future railroad use."  (Pls.' Mem. for Class Certification [8] 2.)

The original Complaint [1] filed on August 25, 2009 by Benny J. and Judy A. Janssen, husband and wife ("Benny and Judy Janssen") and Dreyer Properties, LLC, a Nebraska limited liability company ("Dreyer Properties"), states that the NRI easements for railroad purposes extended from milepost 374 at Rushville, Nebraska, to milepost 331 at Merriman, Nebraska, a distance of 43 miles, in Sheridan and Cherry Counties, and also from milepost 400 near Chadron, Nebraska, to milepost 374 at Rushville, Nebraska, a distance of 26 miles, in Dawes and Sheridan Counties. (Am. Compl. 2.)  Janssen and Dreyer Properties assert they owned land adjacent to the railroad easement on the date of taking and that there are more than 325 parcels of property along these abandoned easements owned by over 170 individuals or entities, the scope of the proposed class – the size of which renders joinder impracticable, thus justifying class certification.

The First Amended Complaint [6], filed December 10, 2009, added as plaintiffs, Lazy HT Ranch, Inc. a Nebraska corporation; Dennis M. and Anita J. Jannsen, husband and wife ("Dennis and Anita Jannsen"); and CG Ranch Company, a Nebraska corporation.  Copies of deeds were attached for plaintiffs Benny and Judy Janssen, Dennis and Anita Janssen, Lazy HR Ranch and CG Ranch, but not for Dreyer Properties.  Thus, the class representatives proposed are: (1) Benny and Judy Janssen; (2) Dreyer Properties; (3) Lazy HT Ranch; (4) Dennis and Anita Janssen; and (5) CG Ranch Company.  By Motion to Certify Class Action [7] filed December 14, 2009, these named plaintiffs seek to certify a class action and act as representative parties on behalf of those similarly situated individuals and entities with property along these easements on the date of the taking.  Following the filing of Plaintiffs' Motion for Class Certification, the parties stipulated to class certification [17] and agreed upon notice procedures and scheduling.

RCFC 23 governing class actions in this court, is modeled after Fed. R. Civ. P. 23, and cases applying that rule have been examined and followed in interpreting RCFC 23.  *See, e.g., Barnes v. United States*, 68 Fed. Cl. 492, 494 n.1 (2005).  A major difference, however, it that this court's rule allows only "opt-in," but not "opt-out," class  actions allowable under the Federal Rule.  RCFC 23, Rules Committee Notes (2002).  An opt-in class "allows each of the unnamed members of the class the opportunity to appear and include themselves in the suit if each is willing to assume the risks of the suit.  This approach resembles permissive joinder in that it requires affirmative action on the part of every potential plaintiff." *Buchan v. United States*, 27 Fed. Cl. 222, 223 (1992).  Consequently, in an opt-in class, "unidentified claimants are not bound if the case should be ruled in the defendant's favor." *Id*.  In an opt-out class, "class members may choose to exclude themselves if they do not want to be bound by the decision or settlements reached in the case."  Black's Law Dictionary 266 (8th ed. 2004).

RCFC 23 provides:
> (a) Prerequisites. One or more members of a class may sue as representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the
representative parties are typical of the claims
or defenses of the class; and
(4) the representative parties will fairly and
adequately protect the interests of the class.

(b) Class Actions Maintainable. A class action may be
maintained if RCFC 23(a) is satisfied and if:
. . .
(2) the United States has acted or refused to
act on grounds generally applicable to the
class; and
(3) the court finds that the questions of law or
fact common to class members predominate
over any questions affecting only individual
members, and that a class action is superior to
other available methods for fairly and
efficiently adjudicating the controversy. The
matters pertinent to these findings include:

(A) the class members' interests
in individually controlling the
prosecution of separate actions;
(B) the extent and nature of any
litigation concerning the
controversy already begun by
class members;
. . . and
(D) the likely difficulties in
managing a class action.

These requirements "can be grouped into five categories; (1) numerosity; (2)
commonality; (3) typicality; (4) adequacy; and (5) superiority." *Fauvergue v. United
States*, 86 Fed. Cl. 82, 95 (2009). Plaintiffs have the burden of establishing each of
the five elements. *Id.* Although the parties have stipulated that these thresholds are
established here and class certification is appropriate, the court independently
examines these requisites.

1. **Numerosity**

The numerosity requirement of RCFC 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable.'" Impracticable, however does not mean impossible. *Fauvergue*, 86 Fed. Cl. at 96. Joinder, governed by RCFC 20(a), requires a right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences. Rule 23 requires common questions of law or fact.

Class certification in rails-to-trails cases has been denied for failure to establish the impracticality of joinder. In *Rasmuson v. United States*, __ Fed. Cl. __, 2010 WL 125972 (Jan. 8, 2010), a contested motion for class certification was denied for failure to satisfy the numerosity requirement (although the court reserved the right to revisit the issue after discovery), where there were 50 potential class members dispersed in five states, owning agricultural properties in close proximity along a 15 mile right-of-way in one Iowa county. The court concluded that the potential class members met the RCFC 20 joinder requirements; there were already 15 named plaintiffs; joinder of the rest would not be impracticable, noting instances of joinder of large numbers of claimants in other cases. 2010 WL 125972 at *7 (*citing Jaynes v. United States*, 69 Fed. Cl. 450, 454-55 (2006) (an estimated 258 members); *O'Hanlon v. United States*, 7 Cl. Ct. 204, 206 (1985) (39 potential members); *Suanooke v. United States*, 8 Cl. Ct. 327, 333 (1985) (50 potential members). Close geographical proximity and ease of identify of ownership through public records made service not impractical, and class efficiencies touted could be experienced by joinder.

In another rails-to-trails case, *Haggart v. United States*, 89 Fed. Cl. 523 (2009), reviewing the parties' Joint Proposal Concerning Class Certification, the court accepted the parties' stipulation, finding that more than 1,100 parcels of land along 25.45 miles of right-of-way were impacted, with a potential ownership plaintiff class of at least 750, and concluded the numerosity threshold was reached.

> In sum, the court finds that the proposed class satisfies the numerosity criterion, giving consideration to (i) the relatively large number of already identified and reasonably estimated class members, (ii) the geographic proximity of all potential plaintiffs, which is amenable to the administration of an opt-in class, and (iii) the likely

small size of the individual claims relative to the likely attorneys' fees and costs of bringing those claims.

89 Fed.Cl. at 532.  The same factors are present here.  The class size of 170 potential plaintiffs along an approximately 70 mile easement, while not as large as the plaintiff class in *Haggart* is more than the 50 potential class size in *Rasmussen*.  The 70 miles in the instant case is a larger geographical chunk than the 25 miles in *Haggart* and the 15.14 mile right-of-way in *Rasmussen*.  Plaintiffs represent that some of the potential class members have relatively small claims, making independent pursuit through joinder pragmatically economically difficult.

## 2.  **Commonality**

RCFC 23(a)(2) requires "questions of law or fact common to the class."  RCFC 23(a)(2).  This requirement is met when there is at least "'one core common legal question that is likely to have one common defense.'"  *Haggart*, 89 Fed.Cl. at 533 (*quoting Fisher v. United States*, 69 Fed. Cl. 193, 199 (2006)); *Fauvergue*, 86 Fed. Cl. at 99.  Common legal or factual issues do not have to be identical; they need only "'share essential characteristics, so that their resolution will advance the overall case.'"  *Haggart* at 532 (*citing Barnes*, 68 Fed. Cl. at 496).

The commonality threshold, which is not high, "serves two primary purposes: first, to ensure 'proposed classes are sufficiently cohesive to warrant adjudication by representation'; and second, to prevent certification of a class that will 'degenerat[e] into a series of individual trials.'" *Fauvergue*, 86 Fed. Cl. at 99 (alteration in original) (citing *Barnes*, 68 Fed. Cl. at 496).

The consequences arising out of the issuance of the NITUs are common to the class.  *Haggart*, 89 Fed. Cl. at 533 (*quoting Caldwell v. United States*, 391 F.3d 1226, 1233 (Fed. Cir. 2004) ("'The issuance of the NITU is the only government action in the railbanking process.'").  The common class legal question is whether the NITUs issued on March 21, 2006 and October 1, 2007 effected a Fifth Amendment taking of plaintiffs' and putative class members' property by blocking reversionary interests, resurrecting easements otherwise abandoned, or creating or increasing the servitude from railway to public trail use.  The parties stipulate that the right-of-ways at issue were created through relatively few government grants and private transactions, so that questions of law or fact common to the representative plaintiffs and putative class

members predominate.  Secondly, the government acted in a manner "generally applicable" to the class in issuing the NITUs.  Factual difference among potential class members may develop in that the damages each individual class member would be entitled to receive, if a taking were to be found, will likely vary.  However, that computation of damages for putative class members may "'ultimately require individualized fact determinations is insufficient, by itself[,] to defeat a class action.'" *Haggart*, 89 Fed. Cl. at 533 (alteration in original) (*quoting Curry v. United States*, 68 Fed.Cl. 328, 334 (2008).  "'[T]here scarcely would be a case that would qualify for class status in this court' if the need to determine damages on an individual basis precluded class certification."  *Id*. (alteration in original) (*citing Barnes*, 68 Fed. Cl. at 498).

At this point in the litigation, the stipulation of the parties that the commonality requirement is met in that common factual and legal issues predominate over any issues specific to individual landowners, is accepted.  At such time, if any, factual, legal or damages distinctions warrant, the parties, or the court on its own motion, may create sub-classes or decertify all or a portion of the class.

### 3.  <u>Typicality</u>

The named representative plaintiffs must establish that their claims are typical of the class proposed in order to meet the typicality element of Rule 23(a)(3): "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  As with the commonality element, the government agrees that the representative plaintiffs with their claims rooted in the two NITUs noted, satisfy this requirement.  The court accepts that stipulation.

### 4.  <u>Adequacy of representation</u>

"A certified class must be 'fairly and adequately protect[ed]' by adequate counsel."  *Fauvergue*, 86 Fed. Cl. at 100 (*quoting* RCFC 23(a)(4)) (alteration in original).  Adequacy of representation requires analysis both of counsel and of the representative plaintiffs proposed.  *Id*. (*quoting Curry*, 81 Fed. Cl. at 336).  As for the former, while the government stipulated to adequacy of representation, the court reviewed the biographical details of five attorneys from Baker Sterchi  Cowen & Rice, L.L.C. a firm with more than 50 attorneys and an extensive support staff  (Pls.' Memo for Class Certification [8] 12-14.)  Particularly, Thomas S. Stewart, designated

attorney of record, is a member of Baker Sterchi Cowden & Rice, L.L.C. and is peer-rated "AV" by Martindale Hubbell. He is the former managing partner and CEO of one of Kansas City, Missouri's largest law firms and has 30 years experience in representing clients in real estate, land use, regulation, business, product liability, personal injury and related federal and state litigation and has personally tried 45 cases in federal and state courts around the country. Note is made of representation by one or more attorneys in this firm in 24 other rails-to-trails cases in this court, as is counsels' representation that they conducted initial research and investigation of the Cherry, Dawes and Sheridan Counties land title and assessor records to determine the identity and number of potential class member that are entitled to make a claim for compensation, and researched the land title records concerning the creation of the railroad right-of-ways at issue in this case. It is concluded that counsel is experienced and knowledgeable in handling class actions, complex litigation and the types of claims asserted herein and, with the assistance and support of said law firm, has the resources necessary to commit to representing the class. RCFC 23(g)(1)(A) The proposed class counsel will fairly and adequately represent the class.[2]

This court's rules allow for only "one attorney of record" who "shall be an individual (and not a firm)." RCFC 83.1(c)(1). That counsel is Thomas S. Stewart, of the law firm of Baker Sterchi Cowden & Rice, L.L.C. Other attorneys from that firm shall be referred to as "of counsel" for the class. *Haggart*, 89 Fed. Cl. at 537.

Also as part of the adequacy of representation requirements, the representative plaintiffs assert they have no competing interests among themselves but rather, possess the same interest and objective and suffer the same injury as the putative class. The government does not disagree. The court accepts the stipulation that, at this time, the putative class members do not have antagonistic interests, and appoints

---

[2] The court reserves the right to reconsider this finding if circumstances change. *See Haggart*, 89 Fed. Cl. 535 n.7.

Benny and Judy Janssen, Dreyer Properties,[3/] Lazy HT Ranch, Dennis and Anita Janssen, and C G Ranch Company as representative parties.

## 5. **Superiority**

The superiority requirement "encompasses the advantage to prospective class members of litigating their own claims, the risk of inconsistent adjudications should multiple actions be pursued, and the court's conceivable difficulties in managing the class action." *Fauvergue*, 86 Fed. Cl. at 101. To establish that a class action is superior to other litigation-management approaches, plaintiffs must show that "a class action would achieve economi[e]s of time, effort, and expense[], and promote uniformity . . . without sacrificing fairness or bringing about other undesirable results.'" Suggesting superiority of a class action, in several other rails-to-trails cases in which an attorney from the Baker Sterchi Cowden & Rice, L.L.C. law firm represents plaintiffs, either the government has stipulated to class certification or certification has been ordered.

| Case Name | Case No. | Date Class Cert. Granted | Judge | Potential Members |
|---|---|---|---|---|
| Asmussen v. United States | 09cv29 | 09/18/09 | Horn | 175 |
| Burgess v. United States | 09cv242 | 09/14/09 | Allegra | 100 |
| Capreal v. United States | 09cv186 | 08/18/09 | Wheeler | 230 |
| Carolina Planting Works v. United States | 09cv9152 | 10/28/09 | Allegra | 100 |
| Gregory v. United States | 09cv114 | 10/05/09 | Wheeler | 400 |
| Haggart v. United States | 09cv103 | 09/28/09 | Lettow | 750 |
| Howard v. United States | 09cv575 | 10/20/09 | Horn | 200 |
| Hunneshagen v. United States | 09cv504 | 10/19/09 | Williams | 180 |
| Jenkins v. United States | 09cv241 | 11/13/09 | Williams | 100 |
| Longnecker v. United States | 09cv172 | 09/11/09 | Horn | 100 |
| Macy Elevator v. United States | 09cv515 | 12/08/09 | Firestone | 160 |

[3/] A search of the Nebraska Secretary of State's public website for the current corporate status of the representative parties was not fruitful with respect to Dreyer Properties, LLC. Accordingly, Dreyer Properties' appointment as a representative party is conditional. Neb. Rev. Stat. § 21-260391) & (2). *See Galen Med. Assocs. v. United States*, 74 Fed. Cl. 377, 380-83 (2006) (holding corporation lacked standing, applying state law). The parties may address this matter as appropriate.

On the other hand, there are several other rails-to-trails cases that involved more than 100 potential plaintiffs which are not proceeding as a class action. As noted, *Rasmuson v. United States*, __ Fed. Cl. __, 2010 WL 125972 (Jan. 8, 2010) denied class certification for lack of numerosity where there were only 51 putative class members and the government opposed certification. In contesting class certification in another rails-to-trails case, the government represented that it was

> currently litigating similar rails-to-trails cases in the Court of Federal Claims that involve more than 100 plaintiffs and which are not being prosecuted as class actions. *See, e.g.*, *Dana R. Hodges Trust v. United States*, No. 09-289 L (Fed. Cl.) (filed May 7, 2009) (involving claims of more than 100 property owners on a 24.7-mile rail corridor in Michigan); *Winder v. United States*, No. 08-324 L (Fed. Cl.) (filed May 1, 2008) (representing lead case of four consolidated cases involving more than 100 parcels on a 15.93-mile rail corridor in southwestern Missouri); *Rogers v. United States*, No. 07-273 L (Fed. Cl.) (filed May 1, 2007) (involving claims of 317 plaintiffs on a 12.5-mile rail corridor in Florida).

*Singleton v. United States*, 09-456, Def.'s Resp. in Opp. to Pls.' Mot. to Certify Class Action at 8-9 (Fed. Cl. Jan. 27, 2010 ).

A class action achieves economies of time, effort, and expense by litigating the same legal and factual issues — whether the STB's issuance of the NITUs constituted a taking in contravention of the Fifth Amendment of the United States Constitution — in one action, as opposed to more than up to 170 separate actions, with multiple counsel and experts which would increase fees and costs. Common title research and a unified approach to property valuation is also fostered and inconsistent adjudications are avoided. Management difficulties can be minimized as notice can be provided relatively easily considering that all proposed class members are situated along the same right-of-way in Cherry, Dawes and Sheridan Counties, Nebraska.

Accordingly, based on the parties' stipulation and the court's review of this matter, it is concluded that all criteria for class certification have been met.

## Certification

In accordance with RCFC 23(c)(1)(B), in granting class certification, the court must "define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)."

## 1. Composition of the Class

The court adopts the definition of the class (*see* Jt. Mot. to Certify Class [17] 7-8) except for the exclusionary groups, some of which are eliminated at this time with the right to revisit as may be appropriate. The court removes from the stipulated definition of the class those "persons who have filed, intervened, or choose to intervene or opt in to separate lawsuits against the United States for compensation for the same interests in land." (*Id.* at 8.) Class members with other actions pending who affirmatively opted in to this action would, upon notice of a duplicative filing, be removed as a class member. If they do not opt-in to this action, there is no need to preclude them by limiting language in the class definition. *Haggart*, 89 Fed. Cl. at 536. There is no suggestion that any judge of the Court of Federal Claims, the Court of Appeals for the Federal Circuit, or the Supreme Court of the United States holds property along the subject rights of way. Therefore, the court removes as unnecessary, the exclusion from the definition of the class, "persons who are judges and justices of any court in which this action may be adjudicated or to which it may be appealed." (*Id.*) Exclusion of any of these from the class may be readdressed at such time, if any, the issue arises.

Accordingly, the class certified by this court is those who affirmatively opt into this lawsuit in accordance with the procedures to be established from the :

All those persons or entities who (1) own an interest in lands constituting part of the railroad corridor or right-of-way on which a rail line was formerly operated by Nebkota Railway Inc. ("NRI") between milepost 374 at Rushville and milepost 331 at Merriman, in Sheridan and Cherry Counties, and between milepost 400 near Chadron and milepost 374 at Rushville, in Dawes and Sheridan Counties, Nebraska; (2) claim a taking of their rights to possession, control and enjoyment of such lands due to the operation of the railbanking provisions of the National Trails System Act ("NTSA"), 16 U.S.C. § 1247(d) when, on

March 21, 2006, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU") relating to the 43-mile portion of the right-of-way located in Sheridan and Cherry Counties and, on October 1, 2007, the STB issued an NITU relating to the 26-mile portion of the right-of-way located in Dawes and Sheridan Counties, Nebraska; and (3) who affirmatively opt into this lawsuit in accordance with the procedures to be established by the court; but (4) excluding owners of land that abuts segments of the subject right-of-way to which the railroad acquired fee simple title, and railroad companies and their successors in interest.

## 2. Class claims and issues

In accord with RCFC 23(c)(1)(b), the primary class claim or issue is whether the STB's issuance of the NITUs on March 21, 2006 and October 1, 2007 resulted in a taking under the Fifth Amendment, requiring the United States to pay just compensation. There are several class sub-issues, including: (1) whether the class members have compensable property interests in the respective right-of-way on the date of the relevant NITU? (2) what was the nature of Nebkota Railway, Inc.'s (and its predecessors) interest in the subject railroad line, and, correspondingly, the nature of the interest retained by the original grantors? (3) if it is determined that there has been a taking of the class members' property, what is the amount of just compensation due? The government has identified possible defenses including: (1) any property interest in the right-of-way was not affected by the NITU; and (2) any class member who did not have an interest in the property on the date of the alleged taking lacks standing.

## 3. Appointment of Counsel

Having previously concluded plaintiffs' counsel of record, Thomas S. Stewart of the law firm of Baker Sterchi Cowden & Rice, L.L.C. has satisfied the requirements of RCFC 23(g), he is hereby appointed as class counsel.

## 4. Provision Regarding Attorneys' Fees and Costs

RCFC 23(g)(1)(C) permits the court to "order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for

attorney's fees and nontaxable costs." Accordingly, to facilitate and disclose record-keeping procedures for attorney fees and costs, on or before **March 15, 2010**, plaintiffs' counsel shall file a supplemental exhibit to Plaintiffs' Motion for Class Certification describing the record-keeping procedures regarding attorneys' fees and other expenses in this litigation and the terms of any agreements with plaintiffs regarding the payment of attorneys' fees and expenses. *Haggart*, 89 Fed. Cl. at 537.

Accordingly, **IT IS HEREBY ORDERED:**

The Motions to Certify Class Action [7] and [17] are **GRANTED**. Identification, notification and closing of the class shall proceed in accordance with RCFC 23(c)(1)(C)(2)(B) and pursuant to a Scheduling Order to follow.

Pursuant to RCFC 10(a), all subsequent filings in this case shall bear the caption shown above.

s/ James F. Merow
James F. Merow
Senior Judge